THE CITY OF WAUKEGAN, Appellant, *vs.* EDWARD P. DEWOLF *et al.* Appellees.

*Opinion filed April 19, 1913.*

1. PRACTICE—*object of section 104 of Practice act, concerning certifying questions of law.* The object of section 104 of the Practice act, authorizing parties to a suit or proceeding to make an agreed case containing the points of law at issue between them, is to enable the parties, by agreement, to submit the questions in dispute between them without the formality of a bill of exceptions.

2. SAME—*when statements of fact will not be expunged from agreement.* Whether a municipal improvement is a local improvement depends upon whether the particular facts bring the case within the legal meaning of the term, and hence the facts concerning the improvement are properly a part of an agreed case certified under section 104 of the Practice act and intended to present the sole question whether the improvement is a local one.

3. SPECIAL ASSESSMENTS—*city's determination of what is local improvement is not final.* The question what shall be considered a local improvement is committed, in the first instance, to the municipal authorities, but their determination is subject to review by the courts, and if it appears from the ordinance and the nature of the work that the improvement cannot properly be regarded as a local one, a special assessment cannot be maintained for its construction.

4. SAME—*test in determining whether an improvement is local.* If the purpose and effect of an improvement are to improve the locality the improvement is a local one though there is incidental benefit to the public, but if the primary purpose and effect are to benefit the public the improvement is not local although it may incidentally benefit property in the particular locality.

5. SAME—*when construction of viaduct is not a local improvement.* The construction of a viaduct over a ravine for the primary purpose of restoring the continuity of a street which was severed by the ravine into two parts, the effect of the improvement being to restore to the public the use of a principal business street of the city, is not a local improvement, even though the improvement will benefit adjoining property more than property at a distance. (*Louisville and Nashville Railroad Co.* v. *East St. Louis,* 134 Ill. 656, explained.)

6. SAME—*what does not determine character of improvement.* An improvement is not a local one merely because it is constructed in a particular locality, as every improvement must have a location and be nearer to some property than to others; nor is it local merely because it confers greater benefit upon some property than upon other property throughout the municipality.

VICKERS, J., dissenting.

APPEAL from the County Court of Lake county; the Hon. DAVID T. SMILEY, Judge, presiding.

ARTHUR BULKLEY, Corporation Counsel, for appellant.

HEYDECKER & PARMALEE, CLAIRE C. EDWARDS, and COOKE, POPE & POPE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The city of Waukegan, appellant, filed its petition in the county court of Lake county asking the court to confirm a special assessment to pay the cost of constructing a viaduct. The court sustained an objection of the appellees that the proposed work did not constitute a local improvement and dismissed the petition. The case is stated by counsel for appellant as follows: "This is a case wherein

Genesee street, the chief business thoroughfare of the city of Waukegan, became severed into two parts by the closing, on account of dilapidation, of an old structure spanning a ravine which bisects said street. To restore the continuity of the street and otherwise improve the same the city council of Waukegan passed an ordinance providing for the grading of that portion of the street abutting upon the brink of the ravine, and also for the carrying of said pavement across the ravine over a viaduct, to be constructed of re-inforced concrete." The error assigned is, that the court erred in holding that the viaduct connecting the two parts of the street was not a local improvement.

There is no bill of exceptions in the record but it contains an agreed statement of the facts, with the stipulation that the point of law to be adjudicated is whether an improvement of the nature, character and description contained in the agreement is a local improvement, such as may be paid for by special assessment. The appellees moved to expunge from the agreement all statements of fact, and this motion was taken with the case. Section 104 of the Practice act authorizes the parties in any suit or proceeding to make an agreed case containing the points of law at issue between them, and the agreed case, with the decision thereon, may be certified to the Appellate Court or Supreme Court without certifying any fuller record in the case, and errors may be assigned and the case shall proceed in the same manner as if a full record had been certified. The object of the section is to enable parties, by agreement, to submit the questions in dispute between them for review without the formality of a bill of exceptions. What is a local improvement is a question of law, and whether the facts in a particular case bring an improvement within the definition, so that it may be regarded as a local improvement, is a question of fact. (*Wilson* v. *Board of Trustees*, 133 Ill. 443.) The facts being recited in the agreement of the parties, the question whether the improvement is a local

one for which a special assessment may be levied is a question of law, upon which the parties, under the Practice act, have a right to invoke the judgment of this court. The motion is denied.

The facts stated are, that the city of Waukegan passed an ordinance for erecting a re-inforced concrete highway viaduct, curbing, grading and paving of a portion of South Genesee street, in blocks 31 and 32, in the original town of Little Fort, (now the city of Waukegan,) from a point 62.4 feet south of the north line of Water street to a point 554.5 feet south of said north line of Water street, at an estimated cost of $74,084.88, to be paid by special assessment. A special assessment roll was returned, by which all the land in the city, consisting of seven thousand tracts, was assessed on a graduated scale, from five dollars per front foot on lands contiguous to the improvement, down to four cents per foot on lands most remote from it. Fifteen thousand dollars was assessed against the city for benefits to the public. The land contiguous to the improvement will be specially benefited. The proposed viaduct is to carry Genesee street over a ravine approximately forty-five feet deep, which bisects said street, which is the chief business thoroughfare in the city, running north and south. The city is three miles in length north and south, two miles in width at its northern end and one and one-half miles in width at its southern end, having a population of 16,500. The viaduct is located about one-fourth mile from the eastern limits of the city, about one and one-quarter miles from the western limits, about one mile from the southern and two miles from the northern limits.

A local improvement has been defined to be a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property as distinguished from benefits diffused by it throughout the municipality. (*City of Chicago* v. *Blair*, 149 Ill. 310.) This definition, which was intended to be explanatory of a "local

improvement," has not, perhaps, added very much to the words themselves. As was said in *State* v. *Reis,* 38 Minn. 371, the only essential elements of a local improvement are those which the term itself implies, viz., that it shall benefit the property on which the cost is assessed in a manner local in its nature and not enjoyed by property, generally, in the city. The definition given in *Crane* v. *Siloam Springs,* 67 Ark. 37, is: "If we look for the technical or legal meaning of the phrase 'local improvement,' we find it to be a public improvement which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, and which is of such a nature as to confer a special benefit upon the real property adjoining or near the locality of the improvement." An improvement is not a local improvement, within the meaning of the constitution and statute, merely because it is constructed in a particular locality, since every improvement has a particular location, and is also local in the sense of being nearer to some persons and property than to others. (*Loeffler* v. *City of Chicago,* 246 Ill. 43.) Such a rule would authorize a special assessment for every improvement in a municipality. Neither is an improvement of a local nature merely because it confers a greater benefit on particular pieces of property than upon others throughout the municipality. This is well illustrated by the case of *City of Chicago* v. *Law,* 144 Ill. 569, where it was held that the city had no right to levy a special assessment to pay for widening and improving the Chicago river. It could not have been claimed in that case that the property of an objector who owned large coal yards adjoining the river and received coal by vessels would not be specially benefited. Clearly, every piece of property along the river would be benefited more than other property in no way connected with navigation, but the widening and improving of the river was held not to be a local improvement because it was designed to be of general benefit

to commerce on the river and lake navigation. A case exactly parallel to this one would be an attempt to levy a special assessment to build a bridge in the city of Chicago across the Chicago river. There would be precisely the same injury to adjacent property if there were no bridge as is suggested by counsel in this case, because the property would be at the dead end of the street and that serious disadvantage would be removed by building a bridge, which would benefit the property. Here is a gulch forty-five feet deep, disconnecting the south part of the city from the north part, entirely preventing travel on the principal thoroughfare of the city and depriving the public of its use, and, of course, it is immaterial that it is not filled with water, being equally impassable as if it were. The purpose of the viaduct is to preserve, as counsel for appellant says, the continuity of the street and to give the public unobstructed and convenient access from one part of the city to the other. The improvement will benefit adjoining property more than property at a distance, but that fact is not conclusive as to the nature of the improvement.

On the other hand, the fact that there is some benefit to the public does not prove that an improvement is not a local one which may properly be paid for by special assessment. Substantially every improvement is of some benefit to all the property of a municipality. Laying water mains for local use and affording protection against fire is a local improvement, (*Hughes* v. *City of Momence,* 163 Ill. 535; *Hewes* v. *Glos,* 170 id. 436;) the primary purpose being to furnish water to the owners of adjoining property and to afford protection against fire to the different localities where the mains are laid, and yet such an improvement is an incidental benefit to the whole municipality by preventing the destruction of valuable taxable property, improving general conditions and perhaps preventing a general conflagration. So the paving of a street is a local improvement, because the substantial benefits to be derived are local

in their nature and adjoining property will be specially and peculiarly benefited in the enhancement of value, but there is also an incidental benefit to the public in the use of the street. The distinction between such an improvement, the main purpose of which is a public benefit, was pointed out in *Crane* v. *West Chicago Park Comrs.* 153 Ill. 348. The question in that case was whether an act conferring upon park authorities power to levy a special tax for the maintenance and repair of boulevards and pleasureways was valid, and it was held unconstitutional and void because such maintenance and repair were not a local improvement, being intended to improve the public use of the street. The court quoted from the opinion of Sharswood, J., in *Hammet* v. *Philadelphia,* 65 Pa. St. 155: "Original paving of a street brings the property bounding upon it into the market as building lots. Before that it is a road, and not a street. It is therefore a local improvement, with benefits almost exclusively peculiar to the abutting property." The same principle was applied in *City of Chicago* v. *Blair, supra,* where a special assessment was levied for the cost of sprinkling streets. There could be no dispute of the proposition that property on a street would be more desirable and specially benefited if the street were kept sprinkled and free from dust, but the object to be attained was not the keeping down of dust for the benefit of such property but to keep the street in proper condition for public travel. The question of permanency had an important place in the decision, but it was conceded that sprinkling the streets during the summer months would benefit adjoining property and enhance its value. It has been held that a stand-pipe, reservoir and pumping apparatus in connection with a system of water-works did not constitute a local improvement which may be constructed by special assessment, (*Village of Morgan Park* v. *Wiswall,* 155 Ill. 262,) and that the erection of a power house and general plant of an electric lighting system is not a local improvement (*Ewart* v. *Vil-*

*lage of Western Springs,* 180 Ill. 318,) although the stand-pipe, reservoir, pumping works and power house are the original sources of purely local benefits. These and other cases demonstrate that the question whether an improvement is a local one, within the meaning of the constitution and statute, does not depend upon the fact that there are incidental or indirect public benefits for which an equitable portion of the cost may be assessed to the municipality, as contemplated by the statute, and is not determined by the fact that some property in the municipality is benefited to a greater degree than other property, but does depend upon the nature of the improvement and whether the substantial benefits to be derived are local or general in their nature. If its purpose and effect are to improve a locality it is a local improvement although there is incidental benefit to the public, but if the primary purpose and effect are to benefit the public it is not a local improvement although it may incidentally benefit property in a particular locality. Water mains laid in a street for local use would be utterly worth-less and afford no benefit to adjacent property without a stand-pipe or reservoir and pumping apparatus to furnish the water which confers the benefit, and poles, electric wires and lamps would be of no benefit without the engine, generator and appliances at the power house which furnish the electricity, but the mains, poles, wires and lamps are held to be local improvements, while the plants which furnish the water and electricity are regarded as improvements of general utility and not coming within the legal definition of local improvements.

The question what shall be considered a local improvement is committed, in the first instance, to the municipal authorities. (*Louisville and Nashville Railroad Co.* v. *City of East St. Louis,* 134 Ill. 656; *City of Chicago* v. *Blair, supra.*) Their decision, however, is not final but is subject to review by the courts, and if it appears from the ordinance and the nature of the work that the improvement can

not be regarded as a local improvement a special assessment
for its construction cannot be maintained and the court will
so declare. (*City of Bloomington* v. *Chicago and Alton
Railroad Co.* 134 Ill. 451; *Village of Morgan Park* v. *Wis-
wall, supra; Hewes* v. *Glos, supra.*) Counsel for the ap-
pellant has correctly stated the purpose of the improvement
in this case to be the restoration of the continuity of the
street, which had been severed into two parts by the ravine
which bisected it. The effect of the improvement, when
made, would be to restore to the public the use of the prin-
cipal thoroughfare of the city. The improvement was pro-
jected primarily for the public benefit and not to convert
the street in front of adjacent property into a passable con-
dition or to benefit such property, and such an improvement
is substantially different from the one held to be a local
improvement in *Louisville and Nashville Railroad Co.* v.
*City of East St. Louis, supra,* which is the main reliance
of counsel for appellant. It is true that in both cases the
improvement consisted of a viaduct, but in that case there
was a street in regular public use across railroad tracks.
The improvement consisted of a viaduct over the tracks,
by which travel would undoubtedly be less dangerous, and
that benefit would accrue to the public. The railroad com-
panies were subject to all the regulations of the law in re-
lation to the operation of their trains at the street crossing,
and the viaduct would result in benefits peculiar to their
property. There was incidental benefit to the public, but
the substantial benefits were to the railroad property. It
was held that the special assessment was not rendered un-
lawful merely because the viaduct would extend across Ca-
hokia creek and serve the purpose of a bridge over that
stream, because it would be impossible to construct the via-
duct without crossing the creek, and the evidence showed
that the cost would not be increased thereby, so that the
railroad companies were paying nothing for the extension
across the creek. If the railroad companies had been called

upon to pay for an improvement consisting of a bridge across Cahokia creek, as was attempted in this case, a very different question would have arisen.

We regard the conclusion of the county court as correct, and the judgment is affirmed.    *Judgment affirmed.*

Mr. JUSTICE VICKERS, dissenting.